UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| RODERICK BURTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:20-cv-00161-SEB-DML ) |
| JAMEY NOEL, JAMES VEALS, | ) ) ) ) |
| Defendants. | ) |

**Order Granting Defendant Noel's Motion for Summary Judgment**

In August 2019, Roderick Burton was a pretrial detainee at Clark County Jail. Late one evening, Officer James Veals attempted to remove Mr. Burton from his cell and place him in administrative confinement based on a comment Mr. Burton made to another guard. An altercation ensued, and Officer Veals ended up striking Mr. Burton multiple times and slamming him against the wall, breaking his jaw.

Mr. Burton brought this suit against Officer Veals contending he violated his rights to be free from excessive force. He also brought claims against Sheriff Jamey Noel contending he was liable individually as Officer Veals's supervisor and as a policymaker for failing to train Officer Veals. Sheriff Noel now moves for summary judgment on both claims. For the reasons that follow, Sheriff Noel's motion is **granted**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a

matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II.
## Factual Background

Because Sheriff Noel has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A.   Officer Veals's Use of Force

At all times relevant to Mr. Burton's complaint, he was confined at Clark County Jail. Dkt. 56-1, Chronological Case Summary from Burton's State Case; Dkt. 56-2, Clark County Jail

Remand Order. At the time of the alleged incident, Mr. Burton was housed in Pod 3. Dkt. 56-3, Deposition of James Veals at 43.

On August 29, 2019, Mr. Burton allegedly made an inappropriate comment to a female officer. Dkt. 63-3, Internal Investigative Summary. Early the next morning, Officer Veals decided to move Mr. Burton from Pod 3 to administrative confinement because of the inappropriate comment made the day before. Dkt. 56-3 at 47. Officer Veals entered the pod and ordered Mr. Burton to leave. *Id.* at 47 – 48.

Mr. Burton initially complied and turn around and placed his hands behind his back. *Id.* at 49. From there, an altercation ensued. Surveillance video shows Officer Veals performing a take down and then striking Mr. Burton in the head / neck area. *See* Dkt. 57, Ex. 4., Video Surveillance of Pod 3 Incident. Mr. Burton was eventually subdued and placed in handcuffs. *Id.*

He was then taken to Pod 2, where another altercation occurred. According to Officer Veals, Mr. Burton stood and spit blood in his face. *See* Dkt. 57, Ex. 5, Video Surveillance of Pod 2. Mr. Burton denies spitting in Officer Veals's face. Dkt. 63-4, Deposition of Roderick Burton at 47 – 48. Officer Veals struck Mr. Burton seven or eight more times. Dkt. 57, Ex. 5. He then slammed Mr. Burton against the wall, breaking his jaw, and escorted him to the booking area. *Id.*; *see also* Dkt. 63-1 at 71 – 72.

### B. Sheriff Noel and the Internal Investigation

Later that morning, Lieutenant Colonel Phillip Parker briefed Sheriff Noel on the force incident. Dkt. 56-5, Affidavit of Phillip Parker ¶ 5. Before this incident, Sheriff Noel had not had any interaction with Mr. Burton. Dkt. 56-4, Deposition of Jamey Noel at 27 – 28.

Col. Parker and Sheriff Noel reviewed the surveillance video and decided to show the video to the Clark County Prosecutor to determine whether charges should be brought. Dkt. 56-5 at ¶ 5.

When the prosecutor declined to prosecute, Sheriff Noel directed Col. Parker to initiate an internal review to determine whether any Clark County policies had been violated. *Id.* ¶¶ 7, 8. Col. Parker assigned the investigation to Major James Haehl, the Chief Detective in the Department. *Id.* ¶ 9. Major Haehl conducted his investigation over the next couple of weeks. *Id.* ¶ 11. He interviewed all of the officers who were in Pod 2 that evening. *Id.* Ultimately, Major Haehl concluded that Officer Veals used excessive force during the second incident in Pod 2. *Id.* ¶ 12; *see also* Dkt. 56-5 at 36, Ex. B, Investigation summary. After reviewing the report, Col. Parker recommended the allegation of excessive force be substantiated, and he recommended that Veals be suspended without pay for three days and required to undergo de-escalation training. *Id.* ¶ 14. Sheriff Noel approved Col. Parker's recommendation. *Id.* ¶ 15.

  **C.**  **Clark County Sheriff's Department Policies**

Clark County Standard Operating Procedure CCSO-065 constitutes the Sheriff Department's use of force police ("the Policy"). Dkt. 56-4 at 27, Ex. 3. The relevant portion of the Policy provides that reasonable force shall be restricted:

> D. The use of reasonable force shall be restricted to the following:
>
>  . . .
>
> 2. The use of physical force by Correctional Officers shall be restricted to instances of justifiable self-protection, protection of inmates from self-harm, protection of others, protection of property, and prevention of escapes. Only that force necessary to control an inmate shall be authorized.

*Id.* at 29.

Sheriff Noel explained that Officer Veals was disciplined for violating the portion that states only force necessary to control an inmates shall be authorized. Dkt. 56-4 at 42. Sheriff Noel testified that he believed the use of force was proper up to a certain point. *Id.* at 43. But he also

explained "[t]he very end of the point where the suspect was attempting to spit and / or resisting against the officer . . . the last couple of blows to the inmate were not necessary." *Id.*

        **D.**        **Officer Veals's History and Training**

Officer Veals obtained his community corrections certification from Lake City Community College in Florida in 1996. Dkt. 56-3 at 9. He earned a law enforcement crossover from Lake Community in 2004. *Id.* He has taken nine career development courses ranging from forty to eighty hours, all dealing with corrections or law enforcement. *Id.* He started his career working in the Florida Department of Corrections from 1996 to 2011. *Id.* at 14. He transitioned to a career in trucking before returning to work in corrections in 2019. *Id.* at 13 – 14. He worked at the Kentucky Department of Corrections for two months before being hired to work at the Clark County Jail in April 2019. *Id.*; dkt. 56-6, Personnel File.

Upon beginning at the Clark County Jail, Officer Veals completed a forty-hour orientation training. Dkt. 63-1 at 18. This involved a board overview of what it was like to work within the correctional setting, and it certified him to become a reserve police officer or deputy sheriff. *Id.* at 19. He also completed a field training program, which discussed the operations of Clark County Jail. Dkt. 56-12, Training Folder.

Part of Officer Veals's training included two 8-hour courses on defensive tactics. Dkt. 63-1 at 21. The first course covered "control fighting," which emphasizes how to maintain control of an inmate when the officer is alone. *Id.* The second course covered restraint control and takedowns. *Id.* at 22. This included discussing grappling techniques, immobilization techniques, and takedowns. *Id.* at 22 – 24.

Officer Veals, at some point, was provided with and acknowledged receiving the policies of Clark County Jail. *Id.* at 20, 30. He reviewed the policies, specifically the use of force policy.

*Id.* at 30. However, he never received training specific to the policies of Clark County Jail. *Id.* He stated, however, it was "pretty much the same standard wording and format as the policies that [he was] familiar with [from] Florida." Dkt. 56-9 at 7. Nonetheless, Officer Veals "had to utilize [his] own personal judgment on the interpretations of [Clark County] policies as well as [his] training from the State of Florida[.]" *Id.* at 30.

### III.
### Discussion

Mr. Burton argues Sheriff Noel is liable for Officer Veals's use of force in two ways. First, he contends Sheriff Noel is liable in his individual capacity as Officer Veals's supervisor because he approved and condoned Officer Veals's use of force. *See* Dkt. 63, Plaintiff's Response at 11. Second, he contends Sheriff Noel is liable in his official capacity for failing to train Officer Veals on Clark County Sheriff Department policies. *Id.* at 13. Sheriff Noel moves for summary judgment on both claims. Each is discussed below.

#### A.  **Supervisory Liability**

"An official may be liable in a supervisory capacity if he was personally involved in a constitutional violation." *Milchtein v. Milwaukee County*, 42 F.4th 814, 824 (7th Cir. 2022) (internal quotations and citation omitted). A plaintiff cannot rely on a theory of respondent superior to hold a supervisor liable; instead, the plaintiff must show that the supervisor—through his or her own conduct—violated the plaintiff's rights. *Stockton v. Milwaukee County*, 44 F.4th ----, No. 22-1116, 2022 WL 3210359, at *8 (7th Cir. Aug. 9, 2022). "[F]or a supervisor to be liable for the allegedly wrongful conduct of others, he must both (1) 'know about the conduct' and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022)).

Here, Mr. Burton falls short on both prongs. There is no evidence that Sheriff Noel knew that Officer Veals was going to use excessive force or that Sheriff Noel facilitated, approved, condoned, or turned a blind eye to Officer Veals's conduct. There is no evidence in the record of other excessive force incidents at Clark County Jail. Nor is there any evidence that this incident was a part of a pattern or that the Jail was rife with guards using excessive force. Sheriff Noel was not present during the incident at issue here, and he testified that before the incident, there "had [been] no other incidents with Officer Veals." Dkt. 56-4 at 43. Based on this record, no rational jury could find Sheriff Noel individually liable for Officer Veals's use of force.

Mr. Burton insists otherwise. He contends that a jury could find Sheriff Noel liable based on the facts that he downplayed the force incident in his deposition, and that Officer Veals was only suspended three days. But Sheriff Noel's after-the-fact conduct cannot not make him personally liable for the constitutional violation. *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002) ("[A] supervisor cannot be held liable in a § 1983 action unless the individual was personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation."); *see George v. Smith*, 507 F.3d 605, 609−10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Accordingly, Sheriff Noel's motion for summary judgment on Mr. Burton's supervisory liability claim is **granted**.[1]

---

[1] Mr. Burton also argues this case is similar to *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010), where the Seventh Circuit denied a school principal qualified immunity and found she could be liable for turning a blind eye to a band teacher sexually assaulting his students. *Id.* at 591. The basis for liability in *Grindle*, however, was that there were *multiple incidents* over the course of *multiple years*. *Id.* at 585 – 87. The principal first was alerted to potential abuse in January 2001; she downplayed the incidents; and then more incidents occurred in January 2002, April 2002, and January 2005. *Id.* Here, there was only one incident of excessive force, and there is nothing to suggest Sheriff Noel was aware of the risk prior to the incident.

### B. *Monell* Liability

Local governments and municipalities may be held liable for constitutional violations. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) (citing *Monell v. Dept. of Socs. Servs.*, 436 U.S. 658, 691 – 92 (1978)). They can only be liable, however, for their own actions; they cannot be liable solely because they employed a wrongdoer. *Milchtein v. Milwaukee Cnty*, 42 F.4th 814, 826 (7th Cir. 2022) ("A municipal entity is not vicariously liable for the constitutional torts of its employees. Instead, a municipality may be liable only for conduct that is properly attributable to the municipality itself.") (internal quotations and citations omitted).

To hold a municipality or local government liable, a plaintiff must satisfy three elements. First, he must trace the constitutional violation to some municipal action. *Stockton*, 2022 WL 3210359, at *6. This can come in the form of "an express policy that causes a constitutional deprivation when enforced, a widespread practice that is so permanent and well-settled that it constitutes a custom or a practices; or an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon v. City of Indianapolis*, --- F.4th ----, No. 20-3125, 2022 WL 3585003, at *4 (7th Cir. Aug. 22, 2022) (cleaned up). Second, he must show the municipal action amounts to deliberate indifference. *Stockton*, 2022 WL 3210359, at *6. And finally, he must show the action was the "moving force" behind the injury alleged. *J.K.J.*, 960 F.3d at 377.

Mr. Burton's theory is that (1) Sheriff Noel is the official with final policy making authority for Clark County Jail; (2) there was an inadequate policy of training officers; and (3) the failure to train Officer Veals caused his injuries.

However, Mr. Burton fails to present sufficient evidence to create a triable issue on both an existence of an inadequate policy and causation. As for the lack of a policy, there is no evidence

of other similar incidents generally at Clark County Jail. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) ("[I]solated incidents do not add up to a pattern of bad behavior that would support an inference of a custom or policy."); *see also Helbachs Café LLC v. City of Madison*, --- F. 4th ----, No. 21-3338, 2022 WL 3350588, at *4 (7th Cir. Aug. 15, 2022) (affirming summary judgment on *Monell* claim where plaintiff provided no evidence of any pattern of similar violations). And this is not the "rare" case where the need for additional training was "so obvious," especially considering Officer Veals was provided a forty-hour orientation course that covered restraint control and takedowns, dkt. 63-1 at 21, and other officers with less experience who had gone through the same training knew it was "unacceptable to strike a handcuffed person except under extreme circumstances." Dkt. 56-5 at 36; *see also Montgomery v. Village of Lake Station*, No. 2:02-cv-209, 2006 WL 2457238, at *10 (N.D. Ind. Aug. 22, 2006) (granting summary judgment on a failure to train *Monell* claim where the only evidence was an officer's testimony that he was not trained on how to use a baton because "[a]n isolated incident of an employee's unconstitutional activity is not enough to impose liability on a municipality").

As for causation, there is no evidence any additional training would have made a difference. Officer Veals had worked in corrections for fifteen years and, in his words, received 1500 to 1700 hours in corrections training. Dkt. 56-3 at 9 – 14; Dkt. 56-5 at 36. Although Officer Veals was not trained specifically on Clark County Jail's policies, dkt. 63-1 at 30, he admitted it was "pretty much the same standard wording and format as the policies that [he was] familiar with [from] Florida." Dkt. 56-9 at 7. No rational jury could find the problem here was a want of comprehension as opposed to a want of compliance. *See J.K.J.*, 960 F.3d at 387 (Easterbrook, J. dissenting). Accordingly, Mr. Burton cannot demonstrate the lack of training was the "moving force" behind his injuries. Sheriff Noel's motion for summary judgment on Mr. Burton's *Monell* claim is **granted**.

## IV.
## Conclusion

Sheriff Noel's motion for summary judgment is **granted**. The **clerk is directed** to terminate Sheriff Noel from the docket in this case. No partial final judgment is entered at this time.

The magistrate judge is asked to hold a telephonic status conference in this matter.

**SO ORDERED**.

Date: 9/2/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Garry R. Adams
ADAMS LANDENWICH WALTON, PLLC
garry@justiceky.com

Curtis Matthew Graham
FREEMAN MATHIS & GARY, LLP
cgraham@fmglaw.com

Andrew Thomas Lay
ADAMS LANDENWICH WALTON
pete@justiceky.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Casey C. Stansbury
Freeman Mathis & Gary, LLP
cstansbury@fmglaw.com

Katherine Elizabeth Tapp
KIGHTLINGER & GRAY LLP
ktapp@k-glaw.com

Magistrate Judge